UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

                     :        Case No. 2:23-cr-118
                             Judge Sarah D. Morrison

MONROE TERRILL BROWN,

    Defendant.

**OPINION AND ORDER**

This matter is before the Court on Defendant Monroe Terrill Brown's Motion to Suppress Physical and Derivative Evidence. (Mot., ECF No. 33.) The Government responded. (Resp., ECF No. 37.) For the reasons set forth below, the Motion is **DENIED**.

**I.    BACKGROUND**

On February 16, 2023, Columbus Division of Police Officers Christopher Davis and David Schultz initiated a traffic stop on a Chevy Malibu with heavily tinted windows. (Resp. Ex. 1, ECF No. 37-1; Resp. Ex. 2, 1:03.[1]) As he switched on the cruiser's lights and sirens, Officer Davis remarked to Officer Schultz, "It's dangerous how much tint there is on that vehicle—I can't see if there's twenty people on-board or one." (Resp. Ex. 2, 1:26.) Video footage corroborates Officer Davis's observation. (*See id.*, 2:04 (showing the Malibu's darkly tinted windows).)

---

[1] Exhibit 2 is video footage from Officer Davis's body-worn camera. The footage was manually filed with the Court. (*See* ECF No. 38.) All time-stamps are approximate.

Officer Davis stopped behind the Malibu and exited the cruiser. (*Id.*) Mr. Brown, who was driving the Malibu, opened his door but did not step out. (*Id.*) Officer Davis approached the vehicle, stooped at the door so that his head was level with Mr. Brown's, and leaned in. Mr. Brown advised that he was with his daughter (a 10-year-old in the back seat) and a co-worker (an elderly man in the passenger seat). (*Id.*) Officer Davis advised Mr. Brown that "the reason [for the stop] is, clearly this tint's illegal." (*Id.*, 2:25.) Mr. Brown advised that the car belonged to his daughter, who had purchased it with the tint as-is. Officer Davis asked for Mr. Brown's driver's license. (*Id.*, 2:35.) He then asked Mr. Brown, "You seem a little nervous, are you alright?" (*Id.*)

After inquiring about Mr. Brown's prior arrests, Officer Davis asked, "Is there any marijuana in the car now? If so, do you guys have any kind of like medicinal, you know. . . ." (Resp. Ex. 2, 2:55.) Mr. Brown said nothing but produced a marijuana cigarette. (*Id.*) "Based on the raw marijuana[,] Officer Davis ordered all occupants to exit the vehicle for a narcotics investigation." (Resp. Ex. 1.)

Mr. Brown got out of the car and Officer Davis patted him down. (Resp. Ex. 2, 3:15.) "During the pat down, Officer Davis felt what he believed to be a small plastic baggie near Mr. Brown's anal cavity." (Resp. Ex. 1.) Officer Davis asked Mr. Brown, "Do you have something tucked, sir?" (Resp. Ex. 2, 3:36.) Mr. Brown responded that he did not. (*Id.*) Officer Davis directed him to the sidewalk. (*Id.*) As Officer Schulz helped Mr. Brown's passenger onto the sidewalk, Officer Davis advised Mr. Brown

2

that they were "making sure there's no other narcotics." (*Id.*, 4:17.) Officer Davis then began to search the interior of the Malibu.

While on the sidewalk, Mr. Brown asked to call the 10-year old's mother and his landlord. Those requests prompted Officer Davis to ask, "Do you have a warrant? Is that why you keep asking for more people to come? I'm just going to check . . . . Why are you asking for a landlord on a traffic stop?" (*Id.*, 5:55.) Officer Davis walked back to his cruiser and ran a records check on Mr. Brown's license. He discovered that Mr. Brown was on supervised release from a federal conviction and that he did not have a valid driver's license. (*Id.*, 7:12.) He placed Mr. Brown under arrest.

After being placed under arrest, Mr. Brown produced crack cocaine from inside his sweatpants—where Officer Davis had previously suspected something was being "tucked." (*Id.*, 8:52.) Officers also recovered eight live rounds of 9 mm ammunition from the pocket of a jacket inside the car and an unloaded SCCY CPX2 9mm handgun from a hidden compartment in the car's center console. (Resp. Ex. 1.)

Mr. Brown was indicted on one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition. (ECF No. 4.) He now argues that the Officers lacked reasonable suspicion to stop the Malibu and probable cause to search it, such that all evidence recovered from the search should be suppressed. (Mot., *generally*.)

## II. MOTION FOR AN EVIDENTIARY HEARING

Mr. Brown requests an evidentiary hearing on his Motion. (Mot., PAGEID # 73.) "An evidentiary hearing is required only if the motion is sufficiently definite,

3

specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (internal quotation and citation omitted). But "a district court can forgo conducting an evidentiary hearing if sufficient content remains to support a finding of probable cause after the contested items are set aside." *United States v. Thompson*, 16 F. App'x 340, 344 (6th Cir. 2001). Though Mr. Brown raises two factual issues, neither warrants a hearing.

First, Mr. Brown questions the Officers' basis for the traffic stop. (Mot., PAGEID # 76.) Acknowledging that police can initiate a traffic stop upon reasonable suspicion of illegal tint levels, he notes that "courts have rejected this justification when it was evident that the officer lacked an experiential or factual basis for suspecting a violation[.]" (*Id.*) But Mr. Brown offers no definite, specific, detailed, or non-conjectural reason to suspect that Officer Davis lacked an experiential or factual basis to stop the Malibu. *Cf. United States v. Shelton*, 817 F. App'x 217, 219 (6th Cir. 2020) (quoting *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008) (concluding that "an officer reasonably suspects a window-tint violation if the officer is 'familiar[ ]' with their state's tint law and 'estimate[s] that [a] vehicle [is] tinted substantially darker than' that law permits").

Mr. Brown next suggests that Officer Davis could not have smelled marijuana, based on his position relative to such a small quantity. (Mot., PAGEID # 78.) He cites decisions in which courts have rejected officers' assertions that they smelled marijuana and details changes in state and local laws' treatment of

4

marijuana over the last ten years. But there is no need to wade into that thicket because, whether Officer Davis smelled marijuana or not, the outcome is the same: Officer Davis had an independent and sufficient basis to search the vehicle when Mr. Brown showed him a marijuana cigarette. *See United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008) (citing *United States v. Puckett*, 10 F.3d 1241, 1246 (6th Cir. 1993)) (upholding denial of motion to suppress because seeing marijuana cigarette established probable cause for vehicle search).

Mr. Brown's request for an evidentiary hearing is **DENIED**.

### III. MOTION TO SUPPRESS

Mr. Brown further argues that the Officers violated his Fourth Amendment right to be free from unreasonable search and seizure when they stopped his car and later searched it. *See* U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]").

<u>Traffic Stop</u>. The law "permits a police officer briefly to detain a person or property for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The Sixth Circuit has explained that "[r]easonable suspicion exists when, based on the totality of the circumstances, a police officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Bey v. Falk*, 946 F.3d 304, 313 (6th Cir. 2019) (quoting *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011)). Although an officer's "inchoate

5

and unparticularized suspicion[s]" are not to be given weight, courts should consider "the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27.

 <u>Vehicle Search</u>. A warrantless search is presumptively unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). "Under the automobile exception to the warrant requirement, an officer may perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity." *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012). "Probable cause exists where 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). It is determined based on "the objective facts known to the officers at the time of the search." *United States v. Smith*, 510 F.3d 641, 648 (6th Cir. 2007) (internal quotation marks and citation omitted). Neither the subjective intent of the officers, nor events that occurred after the search, are considered. *Id*. When probable cause is present under the automobile exception, police may search "any area of the vehicle in which the evidence might be found." *Arizona v. Gant*, 556 U.S. 332, 347 (2009); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully-stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

Officer Davis observed the Malibu while on patrol. He could not determine how many people were in the vehicle, which signaled to him that the tint on the windows "was well below the legal limit of 50 percent visibility." (Resp. Ex. 1.) Officer Davis thus had reasonable suspicion to initiate a traffic stop. Upon approach, Officer Davis asked whether there was any marijuana in the car. Appearing nervous, Mr. Brown produced a marijuana cigarette almost immediately. When Officer Davis instructed Mr. Brown out of the vehicle for a pat-down search, he felt a plastic baggie bulging from Mr. Brown's anal cavity. These circumstances provided sufficient probable cause to search the vehicle. Mr. Brown's summary of more recent changes in Ohio law provides no reason to conclude otherwise.

The Motion to Suppress (ECF No. 27) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**